Booth, Judge,
delivered the opinion of the court:
Plaintiff sues to recover a judgment for $76,531.68. The Milwaukee Patent Leather Company, a Wisconsin corporation now in bankrupty, was, as its name indicates, engaged in producing patent leather. When the country became involved in war the company, recognizing the need for a quality of leather different from patent leather, began to experiment with the tanning of a quality and kind of leather suitable for Army use. Patent leather was a nonessential, and under Government regulations allotments of hides and coal for its production were not favored. Fred A. Vogel was president of the Tanners’ Council and chief of the upper-leather section of the hide and leather contract .branch of the office of the Quartermaster General of the Army during the time covered by this controversy. On April 20, 1918, two traveling supervisors of the inspection *21 leather subdivision in the office of the Quartermaster General, visited the plant of the plaintiff corporation and advised the owners of the necessity for cooperation in producing and supplying to contractors their full portion of Army leather, asserting at the time that if the necessary proportion of leather could not be produced by the corporation because of insufficient equipment the Government would pay for such changes as it was necessary to make. The plaintiff, acting under this assurance, did make changes in its plant equipment, which undeniably cost the company $18,586.80. After the changes were made the company produced a large amount of Army leather and sold it to contractors engaged in making Army shoes for the Government. Yogel advised the company as to the list of Army contractors and wrote the company that all Army leather tanned by it that was satisfactory to the Government would be taken. The corporation presented a claim under the Dent Act to the Board of Contract Adjustment, War Department. The board disallowed it, and the Secretary of War, on appeal, affirmed the disallowance.
The defendant challenges the authority of the two inspectors to enter into a contract to pay for the changes made in the company’s contract. There can be no doubt that an oral agreement was made at the time charged, but proof of this fact alone is not sufficient to sustain the validity of such a contract under the Dent Act. Baltimore & Oho Railroad v. United States, 261 U. S. 592. Authority to act is an essential element of a Dent Act case, and no such authority is proven. On the other branch of the case, i. e., the contention for a right of recovery for the value of the leather left on the company’s hands when the contracts which the Government had with shoe manufacturers were canceled by the Government, two impediments stand in the way of recovery. First. It is not shown what disposition was made of this leather or what, if any, salvage value it may have had. Second. The contract which Vogel is alleged to have made for its taking over by the Government was not in fact a Government requisition. Vogel did advise the company that Government contractors would take and use all the *22 Army leather meeting the necessary requirements. This was no more than an assurance that the needs oí the Government would require plaintiff’s jiroduction and does not amount to a requisition of the leather. The company continued to produce Army leather, and its entire production except the surplus here involved was taken by independent contractors and paid for by them until their own contracts were canceled. The production of leather was under the control of the Government. The tanners were encouraged to increase supply, and the Government kept them advised as to the identity of contractors who would take their supply, and afforded opportunities for the making of contracts with these contractors. The “Tanners’ Council,” through Vogel and assistants, a governmental medium for control of the trading in hides and leather were alone concerned in keeping in touch with the extent of leather production in the country and doing their utmost to keep the supply up to shoe manufacuring contractors’ needs. In this case it is apparent that if the demand had continued every assurance of the council would have materialized; as it happened, the termination of the war closed the demand and left the plaintiff with its supply above the demand. Therefore, the situation, like many of a similar nature, found the plaintiff with a supply of leather which its contractors did not take. The abnormal demand for war supplies was of course one of public notoriety, and manufacturers of supplies were charged with notice that its sudden discontinuance might momentarily occur. Having made contracts with manufacturers to supply their needs, this element of risk was essentially part of the undertaking, and the Government is not to be held liable under the theory of a taking because of the termination of the war, wherein the dealings were directly between an independent contractor and the manufacturer. There is no evidence in the record to warrant a holding that Vogel was taking leather for the Government or that he had authority so to do. The case is similar to the case of Lawrence Leather Co. v. United States, 61 C. Cls. 304.
*23 The petition will be dismissed. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.
GREEN, Judge, took no part in the decision of this case.